# Underwood *v.* Pittsburgh Railways Co., Appellant.

*Negligence—Contributory negligence—Street railways—Right angle collision—Warning—Credibility of witness.*

1. In an action by a woman against a street railway company to recover damages for injuries which she sustained by a collision with a car at a street corner crossing in a city, the plaintiff is not entitled to have her case go to the jury, where it appears that the car stopped to discharge and take on passengers when •but twenty-seven feet from her, within her unobstructed view, and then started up at a rate of speed about as fast as a man would ordinarily walk, after notice from a policeman at the corner to the motorman to come on, and the credible evidence in the case shows that the gong was sounded, although the plaintiff herself testifies that no gong was sounded and that she looked and saw no car..

2. In such a case where the plaintiff's testimony that no gong was sounded is contradicted by the affirmative testimony of all of defendant's witnesses, and is supported merely by the negative testimony of one of the plaintiff's witnesses, and the plaintiff's statement that she looked and saw no car is wholly and absolutely discredited by her own testimony and testimony of the other witnesses in the case, her statement that no gong was sounded is also wholly discredited, and cannot be permitted to support a verdict in her favor.

3. Where a woman steps in front of a street car which she knew was approaching and is run down by it she is guilty of contributory negligence and cannot recover from the railway company; and it is immaterial whether she was struck when she stepped on the track, or by the fender before she came to the track.

4. The fact that a particular street crossing is an exceedingly dangerous place and is frequented by a great many people, does not justify carelessness in a pedestrian in crossing the street in front of an approaching car.

Argued Oct. 21, 1912. Appeals, No. 19 and 20, Oct. T., 1912, by defendant, from judgments of C. P. No. 4, Allegheny Co., No. 585, Fourth Term 1908, for plaintiffs in case of Emma E. Underwood and Emma E. Underwood, Administratrix c. t. a. of the Estate of James Underwood, her husband, v. Pittsburgh Railways Com-

pany.  Before FELL, C. J., BROWN, MESTREZAT, STEW-
ART and MOSCHZISKER, JJ.  Reversed

Trespass to recover damages for personal injuries.
Before CARNAHAN, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for Emma E. Underwood for
$2,500.00 and for the estate of James Underwood for
$760.00.  Defendant appealed.

*Error assigned,* among others, was the refusal of de-
fendant's motion for judgment non obstante veredicto.

*Craig Smith,* with him *Clarence Burleigh* and *Wil-
liam A. Challener,* for appellant, cited on the question
of warning: Anspach v. Philadelphia & Reading Ry.
Co., 225 Pa. 528; Dennison v. North Penn Iron Co., 22
Pa. Superior Ct. 219; Osterheldt v. Peoples, 208 Pa.
310; Harris v. Commercial Ice Co., 153 Pa. 278.

*J. Roy Dickie,* with him *William W. Wishart,* for ap-
pellee.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1913:

This is an action of trespass brought by Emma E.
Underwood and her husband to recover damages for in-
juries which she sustained by a collision with a car of
the defendant company when she was crossing Liberty
avenue at the intersection of that street with Sixth and
Market streets.  At this point Liberty avenue runs east
and west, Sixth street enters it at right angles and ex-
tends north to the Sixth street bridge crossing the Alle-
gheny River.  Market street enters Liberty avenue from
the southwest and directly opposite Sixth street.  The
defendant company has two car tracks on Liberty ave-
nue, two tracks on Sixth street, the westerly or out-
bound track of which curves to the east connecting with
the track on the south side of Liberty avenue, and also

to the west connecting with the track on the north side
of the avenue. The easternmost track on Sixth street
curves to the west, crosses both tracks on Liberty ave-
nue and connects with another track parallel with and
south of the other two tracks on Liberty avenue. There
are no street car tracks on Market street. Liberty ave-
nue is eighty feet wide between building lines and forty-
eight feet two inches between curbs, and Sixth street is
sixty feet wide between building lines and thirty-six
feet between curbs. The distance from the curb on the
south side of Liberty avenue to the first track is about
fifteen feet and a half, and to the first rail of the curved
track is twenty-four feet. At the time of the accident
there were no cars running eastwardly on Liberty ave-
nue excepting the cars coming from Sixth street and en-
tering on the curve.

About noon on September 8, 1907, Mrs. Underwood
approached the south side of Liberty avenue on the side-
walk on the south side of Market street, going in the
direction of the Sixth street bridge. She describes her
attempt to cross the avenue as follows: "I was crossing
the street from the Market street side over across Lib-
erty to the north side of Liberty avenue and I looked at
the curve.......Before I attempted to cross the street I
looked everyway to see if there was any car or anything
passing that would—that would cross this street before
I started over, and when I was crossing the street I was
still vigilant to see that the way was clear, and when I
stopped on the track or inside of the track this car came
suddenly out. There was two persons, two gentlemen
that were walking a little in front of me and to the left
and there were other people crossing at the same time,
but the car caught me at the track and carried me about
a car length." She further testified that when she was
struck she was between the rails of the track coming out
of Sixth street; and that before she started to cross the
street she looked both ways and saw and heard no car
coming from any direction and she looked down Sixth

street and saw no car approaching from that direction. She further says there were no vehicles or anything else on the street at the time to interfere with her view of a car if one had been coming, and that the way was clear. In addition to this she testifies that after she left the sidewalk and was walking toward the tracks she continued to look, especially towards the Sixth street track until she was struck. She says she did not see the car with which she collided until she was struck, and that there was no warning given of the approach of the car to the crossing.

W. W. Hobson, the only other witness of the plaintiff who saw the accident, testifies that at the time of the accident he was about five feet from the car track and that the plaintiff was not on the track at the time she was struck but was two feet south of the track, and was caught by the projection of the fender as the car went around the curve.

The negligence alleged in the statement is a high rate of speed of the car and the failure to give warning of its approach to the crossing.

The defendant company denies its liability for the accident. It alleges that it was not negligent in the operation of the car which caused the plaintiff's injuries, and that the plaintiff was guilty of contributory negligence. The undisputed testimony on the part of the defendant showed that the car which collided with the plaintiff came west on Penn avenue, a street parallel to Liberty avenue and one block distant, went south on the western track on Sixth street to the crossing of that street on the north side of Liberty avenue, stopped there and discharged and took on passengers. It then started around the curve to go east on the south track on Liberty avenue when it struck the plaintiff at a distance of twenty-seven feet from where it started. The defendant's witnesses testified that before the car started around the curve the police officer at the corner gave the signal to the motorman to proceed, that he sounded the

gong twice before starting and continued to sound it until the plaintiff was struck. It further appeared by the undisputed testimony that at the time of the accident the car was running about as fast as a man would ordinarily walk.

We are unable to see that the evidence in the case establishes any negligence on the part of the defendant company in the operation of its car, and think it clearly appears that the plaintiff's injuries resulted from her own negligence. When she approached Liberty avenue from Market street and before she attempted to cross she was directly in front of Sixth street and had a clear and unobstructed view down it two blocks to the end of the Sixth street bridge crossing the Allegheny river. According to her own testimony there was nothing to obstruct her view in any direction, unless it be the two men who were crossing the street at the same time. Notwithstanding these facts she testified that she looked in every direction immediately before attempting to cross and continued until she was struck by the car but did not see any car on Sixth street or at any other place until the collision. There is no denial of the testimony showing that the car came up Sixth street at least a distance of one block, that it stopped at the crossing, and discharged and took on passengers, and that it was proceeding very slowly at the time of the accident. The testimony of the plaintiff that the gong was not sounded or other warning was not given of the approach of the car was so wholly discredited that it could not be permitted to support a verdict. A police officer of the city was on duty at the place and before the car could be started the motorman was required to receive a proper signal from the officer. This was preceded by the sounding of the gong by the motorman to give notice to the officer that he was ready to proceed. The testimony of the officer and of the defendant's other witnesses is positive that the notice to the officer by sounding the gong and his signal to the motorman to proceed were given.

This is contradicted only by the negative testimony of Hobson who says he did not hear the signals and the somewhat inconsistent testimony of the plaintiff that the gong was not sounded. This testimony of the plaintiff cannot be regarded as credible in view of her other testimony that she looked down Sixth street as she was crossing and saw no car approaching. Under the undisputed facts in the case this was not true, and if she was mistaken or false as to that fact her testimony as to the sounding of the gong, in view of the contradictions by all the witnesses on the part of the defendant, cannot be regarded as worthy of belief. Without going further into the testimony, it is sufficient to say that it did not warrant the finding that the defendant was guilty of negligence in the operation of its car when it collided with the plaintiff.

If, however, there is any doubt as to the defendant's negligence, there can be no question as to the plaintiff's contributory negligence. It is idle for her to say that when she stood on the pavement on the south side of Liberty avenue and looked in every direction for a car and continued to look until she was struck, she did not see the approaching car. This could not be true under the conceded facts in the case. It is settled beyond doubt by the testimony that when the plaintiff was standing on the pavement immediately before crossing, the car which collided with her was at the stopping place on Sixth street or had actually started from there when she started to cross the street. There is no other reasonable conclusion to be drawn from the evidence, and such being the fact, she either did not look or if she did look she saw the car and knew before she had reached the track that it was approaching the very point at the crossing at which she was struck. The accident occurred at noon and with nothing to obstruct the plaintiff's view in any direction. There was no difficulty in her seeing that the car was coming in her direction the moment it left the crossing if she continued to look until

she reached the curved track. She must have seen that it was not turning to the right to go west on the avenue but was turning to the left and was coming directly toward her. She does not say that she was, and she could not have been, confused by conditions as they existed at the time. It is true, as suggested by the court, that the crossing is an exceedingly dangerous place and is frequented by a great many people, but those facts do not justify the plaintiff's carelessness in approaching the crossing. They did not prevent her from seeing the car if she had looked. This is not pretended. If she had seen the car there can be no doubt she could have avoided the collision at the rate at which it was running. It is immaterial that it was on a curved instead of a straight track. The opportunities to see were the same in this case. As suggested above, before she started she had a clear and unobstructed view down Sixth street from which the car approached, and the moment it left the stopping place she could see that it was coming in her direction. This is conclusively shown by the fact, as appears by her testimony, that she was struck when she "stepped on the track or inside of the track." When she was struck, the car had run twenty-seven feet from where it stopped on Sixth street and she had walked about the same distance from the curb. Under these circumstances, the plaintiff cannot be heard to say that she looked and did not see the car approaching; on the contrary, it convicts her of stepping immediately in front of a car which she knew was approaching and which was the cause of her injuries. It is immaterial whether she was struck when she stepped on the track or by the fender before she came to the track. In either case it was her own negligent conduct in stepping in front of the car which resulted in the collision. It is clear, we think, that under the undisputed evidence in the case the plaintiff was guilty of negligence which caused her injuries, and that the court should have so

held and instructed the jury to return a verdict for the defendant.

The assignments of error are sustained, the judgment of the court below is reversed, and judgment is now entered for the defendant.